IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SCOTT BENNETT,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

    Defendant.

Case No. 11-CV-203-FHM

**OPINION AND ORDER**

Plaintiff, Scott Bennett, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

**Standard of Review**

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's March 5, 2008, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") Charles Headrick was held September 21, 2009. By decision dated December 9, 2009, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on February 5, 2011. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 33 years old on the date of alleged onset of disability and 39 on the date of the denial decision. He has completed the 11th grade and formerly worked as fork lift driver, loader, warehouse worker, and dump truck driver. He claims to have been unable to work since February 17, 2004, as a result of back pain, status post lumbar fusion.

## **The ALJ's Decision**

The ALJ determined that Plaintiff retains the ability to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a). Based on Plaintiff's age, education, wok experience, and residual functional capacity (RFC), the ALJ found Medical-Vocational Rule 201.28 directed a finding of "not disabled." In addition, the ALJ relied on the testimony of a vocational expert to find that there are a significant number of jobs in the national economy that Plaintiff could perform. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is

2

disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that: the ALJ failed to give Dr. Hastings' opinion controlling weight; the reasons for the credibility decision are not supported by the record; the hypothetical question to the vocational expert failed to include all of his impairments; the ALJ did not give adequate consideration to his mental impairments; and the ALJ failed to consider the non-exertional impairments of pain and mental impairment in relying on the Medical-Vocational Guidelines (Grids) to deny his claim.[2]

## Analysis

Plaintiff's medical record is complicated. He was injured in an on-the-job accident in February 17, 2004. As the following summary of the medical evidence demonstrates, he had multiple surgeries beginning in April 19, 2004, with the last one performed in October 2006. In January, 2007, while he was recovering from the final surgery, Plaintiff was in an automobile accident and received more injuries. Throughout this time Plaintiff was prescribed pain medications. In addition, he was prescribed medications for anxiety beginning at least in March, 2007 and continuing through at least May 2008. [R. 761-770].

The entire time from Plaintiff's February 17, 2004 injury to the date of the ALJ's denial decision, December 9, 2009 is relevant to the decision in this case. Plaintiff applied for benefits under Title II (DIB) and under Title XVI (SSI). [R. 115, 118]. The relevant time

---

[2] Plaintiff's arguments concerning reliance on the medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2. (grids) are not germane to this case and are not discussed. The ALJ did not conclusively rely on the grids to deny Plaintiff's claim. *See Channel v. Heckler*, 747 F.2d 577 (10th Cir. 1984) (discussing appropriate application of the grids).

frame for the DIB claim is from the alleged date of onset, February 17, 2004 to the date last insured, December 31, 2008. The relevant time frame for the SSI claim is from the date of application, March 5, 2008,[3] to the date of the ALJ's decision, December 9, 2009.

Plaintiff was injured in an on-the-job accident on February 17, 2004. He suffered a fracture to his right ankle, lumbar spine and right shoulder injuries. On March 16, 2004, an MRI revealed a large necrotic fragment in the ankle. [R. 444]. On April 19, 2004, surgery was performed on Plaintiff's ankle in which a bone graft was taken from his knee and affixed to the ankle with hardware. [R. 439]. Use of crutches aggravated the shoulder injury and rotator cuff repair surgery was performed on August 4, 2004. [R. 239]. By August 25, 2004, it was noted that Plaintiff's ankle was not healed. [R. 465]. On November 9, 2004, Plaintiff was released for lifting less than 25 pounds in regard to his shoulder. [R. 248]. On February 10, 2005, he was released from the care of his shoulder surgeon.

Throughout this time, various diagnostic tests were run on Plaintiff's back. On September 2, 2005, Plaintiff's neurosurgeon noted his back pain was not improved by injections and physical therapy and Plaintiff needed surgery to correct the back pain. However, back surgery needed to wait until Plaintiff's ankle was healed. [R. 634-37].

On November 7, 2005 Plaintiff underwent another ankle surgery because of non-union of the fracture. [R. 470]. On March 1, 2006, Plaintiff was diagnosed with septic arthritis of the right ankle. He was admitted to the hospital for ten days during which multiple debridement procedures were performed. [R. 275]. He was released on outpatient IV antibiotics. *Id*. On April 5, 2006, Plaintiff's neurosurgeon noted he was still

---

[3] The ALJ recites February 19, 2008 as the date of the application. [R. 14]. The court finds no support in the record for that date. [R. 115, 118].

on IV antibiotics and his ankle was still draining, but when the ankle was healed he was a candidate for L4-5 discectomy and anterior lumbar interbody fusion with LT cages. [R. 626]. Plaintiff was released from the care of his ankle surgeon on September 6, 2006. The surgeon noted he had some restricted range of motion and suggested he should do sedentary work. [R. 518].

On October 10, 2006 back surgery was performed. [R. 652]. On October 25, 2006, Plaintiff returned to his neurosurgeon's office for an unscheduled appointment because his pain was worse. The surgeon thought the problem was a tolerance to pain medication because he had been on them for so long. [R. 622]. The surgeon's notes from November 6, 2006 reflect that Plaintiff was in the emergency room over the weekend with shortness of breath and chest pain, pulmonary emboli and upper extremity edema secondary to PIC lines and IV treatment for complications of ankle surgery. [R. 619]. On November 10, 2006, it was noted Plaintiff's hands were swollen due to medications, but he had no hip or leg pain. [R. 616-17]. On December 15, 2006, it was noted Plaintiff continued to improve. Physical therapy and work-hardening were recommended. [R. 614].

On January 10, 2007, Plaintiff was in an automobile accident where the truck he was driving was t-boned, causing neck and back pain. [R. 612]. Afterward (January 2007 to July 2007), Plaintiff complained of increased neck stiffness, intermittent hand numbness, back pain, and intermittent leg pain. [R. 601-609].

On March 5, 2008, the instant applications for disability benefits and Supplemental Security Income were filed. On May 30, 2008, Plaintiff's neurosurgeon filed a report that an MRI of the lumbar-sacral spine revealed no disc disease and no dehydration of the disc. There was nothing further surgically to be done and the neurosurgeon expressed the

5

opinion that he did not see why Plaintiff could not return to work and that the only thing that might limit his ability to work was his subjective pain symptoms. He thought Plaintiff could lift 25 pounds and could sit and stand as long as needed. [R. 733].

Plaintiff's assertions that the ALJ erred by failing to include all of his impairments in the RFC and the hypothetical question to the vocational expert, that the appropriate weight was not accorded the opinion of his treating physician, and that the ALJ picked through the medical records focusing on findings that support denial and ignoring other significant findings have merit. These allegations all relate to the ALJ's failure to take into account the ongoing nature of Plaintiff's problems and the timing of his multiple surgeries. Since these allegations are all interrelated, in this case it makes sense to address them together.

The ALJ's residual functional capacity (RFC) determination, credibility determination, and his evaluation of the opinion of Plaintiff's treating physician, Dr. Hastings, do not take into account the ongoing nature of Plaintiff's problems and his multiple surgeries during the February 2004 to May 2008 time frame. In formulating the RFC and evaluating Plaintiff's credibility, the ALJ's relied on the various surgeons' notes releasing Plaintiff from care after Plaintiff had recovered from the surgery that particular surgeon performed. That approach may be appropriate for the post 2008 time frame but does not address Plaintiff's abilities and credibility throughout the 2004 to 2008 period. Since the ALJ did not perform an analysis for the 2004 to 2008 period, the court cannot say that the RFC and credibility findings are supported by substantial evidence.

The court finds that the ALJ's decision must be reversed and the case remanded for an analysis of Plaintiff's ability to work following his February 2004 accident. The court notes that the medical records strongly suggest that there was at least some period of time

while he was having multiple surgeries during which Plaintiff may have been disabled, which is the inability to engage in any substantial gainful activity by reason of his medically determinable physical or mental impairment or combination of impairments that lasted for a continuous period of not less than 12 months. *See* 20 C.F.R. § 404.1505(a), § 416.905(a) (defining disability).

The court also finds that the ALJ did not follow the prescribed procedure for evaluating an alleged mental impairment. When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same). The ALJ did not document that he followed the required procedure. The ALJ is required to do so on remand and to link his findings to the record.

In addition, since the case is being remanded for further proceedings which will include formulation of an RFC and possible presentation of hypothetical questioning to a vocational expert, the undersigned will address a matter which should also be corrected on remand. In the hypothetical question to the vocational expert the ALJ asked the expert to assume the physical capacity to perform work consistent with the limitations of Exhibit 21F. [R. 48]. Exhibit 21F is an 8-page form that may contain work-related limitations and narrative comments spread over 6 pages. [R. 771-778]. Asking the vocational expert to review such an exhibit to glean limitations to be included in a hypothetical question invites

confusion and needlessly introduces an opportunity for miscommunication and misunderstanding that are avoided when the ALJ formulates the limitations and verbally expresses them to the vocational expert. In this regard, the undersigned notes that at the hearing Plaintiff's attorney had to clarify with the vocational expert whether all the restrictions contained in Exhibit 21F were considered in answering the hypothetical question. [R. 50]. In addition, the court notes that Exhibit 21F contains the limitation of occasional right overhead reaching, but that limitation was not included in the RFC contained in the ALJ's decision. [R. 17, 774]. On remand the ALJ should take care to eliminate this potential for misunderstanding.

## Conclusion

The ALJ's denial decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED this 31st day of July, 2012.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE